[No. 12507.   In Bank. — December 3, 1890.]

## WILLIAM TRENOUTH, Appellant, v. S. B. GILBERT et al., Respondents.

Trust — Tenancy in Common — Adverse Possession — Prescription — Sufficiency of Evidence — Review upon Appeal — Decision upon Former Appeal — Change of Evidence. — In an action to establish a trust by one claiming to be co-tenant, with others, of a tract of land, where there is sufficient evidence tending to show that all of the contesting defendants had repudiated the plaintiff's claim, and held adverse possession for more than five years after plaintiff's right of action accrued, and before suit brought, findings of the court as to adverse possession of the defendant for the statutory period sufficient to bar the plaintiff's right of entry will not be disturbed, although the evidence may be conflicting, and although upon a former appeal the judgment was reversed for insufficiency of a less amount of evidence in favor of the defendants to sustain such findings.

Appeal from a judgment of the Superior Court of San Mateo County, and from an order denying a new trial.

The facts are stated in the opinion.

*York & Whitworth,* for Appellant.

*Pillsbury & Blanding, E. J. & J. H. Moore, John Rey-nolds, M. G. Cobb, Charles N. Fox, Cope & Boyd,* and *Arthur Rodgers,* for Respondents.

FOOTE, C. — This case has been here before (63 Cal. 405). It is an action to establish a trust by one claim-ing to be co-tenant, with others, of a tract of land in San Mateo County, and for other relief in connection there-with.

The question determined on the former appeal seems to have been that the findings of fact, to the effect that the defendants held an adverse possession of the lands in dispute for a time sufficient to bar the plaintiff's right of action was not sustained by the evidence. That find-ing was, in substance, that the plaintiff's cause of action accrued more than four years before the commencement of the action, and that there had been a continuous ad-verse possession by the defendants for more than five years prior thereto.

It was then said that the only evidence to sustain the finding was that of one witness (Mr. Teague). Upon the trial of the case now on appeal, which seems to have been tried with a view to obviate the objection sustained on the former appeal, there was other evidence, which tended at least to show that all of the contesting defend-ants held adverse possession for more than five years after plaintiff's right of action accrued before suit brought. First, there was a deposition of Mr. Teague read, taken since the former trial. He testified: "That the defendants answering in the suit were all in the occu-pancy, cultivation, inclosure, and pasturage of the entire four leagues; some claiming to own one thousand acres, and others a less quantity, and claiming to own sepa-rately. 'They claimed all the legal title to the land in

their possession, dating back as far as 1858, through themselves and their grantors.' They claimed the whole legal title."

As to the equitable title, he says that he knew of their having notice of the equitable title (bought by the plaintiff on the twentieth day of April, 1866) as early as 1867, and previous, running back to 1864; conversed with them individually and separately about this equitable title, purporting to arise under the will of one Buelna; they all refused to recognize it, except Mr. Bell, who is not a party to this action, he having bought the plaintiff's title to his, Bell's, tract of land.

He also said that in 1867 or 1866 Trenouth requested him to speak to these defendants in possession, and propose to them a compromise. He did so, and reported progress, but the defendants all repudiated Trenouth's claim. He states that he is confident that it was in 1866 that he first told Trenouth that the chances for a compromise with the defendants seemed bad; that the defendants said they had all the legal title; that they had improved the land; that they had bought up one bogus claim, purporting to have arisen under this will (that of Buelna, the Mexican grantee of the land), and did n't propose to buy off any more.

Moses Davis, who testified that he was interested with the plaintiff in his purchase of this equitable interest from Juan B. Buelna and Maria Luisa Buelna, made on the 20th of April, 1866, states that he had been employed by all the settlers on this rancho to work up the evidence in another case pending against them, that of Wilson et al. *v.* Castro, and that, in order to do that, they had to show that the Mexican grantee, Buelna, had made a will, and that, in working up the evidence, he discovered this fifth interest, that Trenouth bought, and on which this suit is predicated, had never been conveyed; he endeavored to get "our people" to purchase, but they would not, and he then arranged for the plaintiff to purchase it.

Mr. Raynor testified that he, and other parties holding under the same title that he claimed, by genuine patent title from the United States government through Wilkins and Hepburn, had possession of the whole ranch from 1858 to 1872; that he had a conversation with the plaintiff just after he bought his claim (April 20, 1866), and told the plaintiff he was sorry that plaintiff had got himself into such a speculation; that the title he, plaintiff, was trying to get was of no value whatever, and Moses Davis had just led him into it for the purpose of making money out of him; he always told Trenouth there was nothing in it for him, he could get nothing out of it; that Trenouth wanted him to talk to the other settlers, and see what compromise could be made.

Mr. Gordon testified that he and most of the defendants had been in possession since 1863. While he was acting for the settlers to resist Trenouth's claim, as well as that in Wilson et al. *v.* Castro, some time in the summer of 1866, not more than three or four months after Trenouth's purchase, he had a conversation with Trenouth, in which the latter was trying to induce him to help have a settlement made with the other settlers, and held out certain inducements to him. He replied that "he did not consider there was anything in it"; that the settlers and himself did not consider his, Trenouth's, title worth anything; that he told Teague and Trenouth that he had already advised the settlers to resist Trenouth's claim; that he had been employed in this matter by all the settlers but Bell and Seale; that this was in 1866, not more than three or four months after Trenouth's deed went on record.

Mr. Seale testified that he purchased his ranch from Lloyd Tevis on the 4th of August, 1863. He had used the land for his own purposes; it had been under fence all the time he had used it; had a dairy for several years, and for the last thirteen or fourteen years had rented it. It had been under fence all this time. He claimed under

the title obtained from Lloyd Tevis, which was the title of the original heirs of the Buelna title under the patent. He had talked with Tevis about Trenouth's title, and to Bell and Gordon, when he bought, but to none others. He had resisted Trenouth's claim when suit was brought by him against Dall and others, in 1868; that all this time he claimed under his deed from Tevis, and received all his rents and profits without accounting to any one.

Taking the whole testimony in this case, it presents this aspect: Trenouth bought the equity he claims, on a speculation, after the settlers had refused to have anything to do with it, in April, 1886; he was not certain, according to his own evidence, on his cross-examination, whether he had title or not; he waited to see the result of the Wilson *v.* Castro suit. The settlers, defendants here, who had bought the patent title, which was the legal title, when informed of Trenouth's purchase, would not acknowledge, but repudiated, his title, according to the evidence of witnesses called for them, and whose evidence we have quoted; then, after his efforts to induce them to compromise with him, and pay him for his alleged title, had failed, and he had hesitated a long time to await the result of other litigation, uncertain as to his title, he brings suit on March 13, 1872, a little less than six years from the date of his purchase, and about five years and a half from the time when these defendants, in possession by themselves or their agents, when approached by him to settle with him, repudiated his claim and refused to settle, having always claimed, since their purchase, to hold under that patent the whole legal title.

As it seems to us, the findings as to adverse possession for the statutory period sufficient to bar the plaintiff's right of entry is at the most based upon conflicting evidence, and should not be disturbed.

We therefore advise that the judgment and order be affirmed.

VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

BEATTY, C. J., concurred in the judgment.

Rehearing denied.